JUDGE SWAIN

14 CV    5353

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

DANIEL KANE JR., OSCAR GONZALES,
CHARLES MACHADIO, MYRA GORDON,
VINCENT PACIFICO and MICHAEL FERGUSON as
TRUSTEES OF THE UNITED TEAMSTER FUND and
as TRUSTEES OF THE UNITED TEAMSTER
PENSION FUND "A,"

Case No.

RECEIVED
JUL 16 2014
U.S.D.C. S.D. N.Y.
CASHIERS

**Plaintiffs,**

**COMPLAINT**
ECF ACTION

- against -

**JURY TRIAL DEMANDED**

KOREAN FARM CORP. and
GUN JOONG KIM,

**Defendants.**
-------------------------------------------------------------------X

Plaintiffs, DANIEL KANE, JR., OSCAR GONZALES, CHARLES MACHADIO, MYRA

GORDON, VINCENT PACIFICO AND MICHAEL FERGUSON as TRUSTEES OF THE UNITED

TEAMSTER FUND and as TRUSTEES OF THE UNITED TEAMSTER PENSION FUND "A,"

(collectively, the "Plaintiffs" and/or "Trustees") by their attorneys, Dealy Silberstein & Braverman,

LLP, complaining of KOREAN FARM CORP. ("Korean Farm") and GUN JOONG KIM ("Kim")

(collectively the "Defendants"), hereby allege as follows:

## NATURE OF THE ACTION AND JURISDICTION

1.    This is a civil action brought against Korean Farm pursuant to the Employee Retirement

Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132(a)(3), 1132(e)(1),

1132(f), 1145; and the Labor Management Relations Act of 1947, as amended ("LMRA"),

29 U.S.C. § 185(a).

2. This action seeks to recover, inter alia, delinquent health, welfare, and pension contributions which are owed to the Funds by Korean Farm pursuant to the applicable collective bargaining agreement ("CBA") between Korean Farm and the Union and from Defendants Korean Farm and Kim pursuant to the breach of a prior Stipulation of Settlement dated August 13, 2013, a copy of which annexed hereto as Exhibit "A".

3. Jurisdiction of this Court is involved under the following statutes:

   a) ERISA, in sections codified as 29 U.S.C. §§ 1132(e)(1), 1132(f) and 1145;

   b) LMRA, in section codified as 29 U.S.C. § 185(a);

   c) 28 U.S.C. § 1331 (federal question); and

   d) 28 U.S.C. § 1337 (civil actions arising under Act of Congress regulating commerce).

## VENUE

4. Venue properly lies in this district pursuant to section 502(e)(2) of ERISA (29 U.S.C. § 1132(e)(2)).  Service of process may be made on Korean Farm in any other district in which it may be found, pursuant to section 502(e)(2) of ERISA (29 U.S.C. §1132(e)(2)).

## THE PARTIES

5. At all relevant times, Plaintiffs, the Trustees of the United Teamster Fund, have administered the United Teamster Fund (the "Welfare Fund").

6. The Welfare Fund was established in 1949 by Declarations of Trust, which have been amended from time to time (the "Trust Agreements").

7. At all relevant times, Plaintiffs, the Trustees of the United Teamster Pension Fund "A," have administered the United Teamster Pension Fund "A" (the "Pension Fund").

8. The Pension Fund was established in 1957 by Trust Agreements, which have been amended from time to time.

9. The Welfare Fund and the Pension Fund are referred to collectively herein as the "Funds."

10. The Funds are "employee benefit plans" established pursuant to Section 302(c)(5) of the LMRA, 29 U.S.C. § 186(c)(5), within the meanings of Sections 3(1), 3(2), and 3(3), and 502(d)(1) of ERISA, 29 U.S.C. §§ 1002(1), 1002(2), 1002(3) and 1132(d)(1) and are multi-employer plans within the meaning of sections 3(37) and 515 of ERISA (29 U.S.C. §§ 1002(37) and 1145).

11. The principal place where the Funds are administered is 2137-2147 Utica Avenue, Brooklyn, New York, 11234.

12. The purpose of the Funds is to provide various fringe benefits to eligible employees on whose behalf employers contribute to the Funds, pursuant to collective bargaining agreements between employers in the food and produce industry and Local 202, International Brotherhood of Teamsters, AFL-CIO, (the "Union"). The Funds receive contributions from, inter alia, employers who are parties to collective bargaining agreements with the Union, invest and maintain those monies, and distribute pensions and health and welfare benefits to employees and to beneficiaries eligible to receive them pursuant to the Funds' plans.

13. Upon information and belief, Korean Farm was at all relevant times a corporation duly organized under the laws of the State of New York, with its principal place of business located at 352/353 NYC Terminal Market, Bronx, New York 10474.

14. Upon information and belief, Defendant Kim is the principal of Korean Farm.

## FACTS

15. At all relevant times, Korean Farm has been a party to the CBA with the Union which covers, inter alia, the wages, terms, and conditions of employment for its employees who are working in covered employment.

16. Pursuant to the CBA, the Trust Agreements and ERISA, at all relevant times, Korean Farm was obligated to remit monthly health, welfare and pension contributions and reports to the Funds on behalf of all its employees working in covered employment on or before the tenth (10th) day of each month, for all employees covered by the CBA, where an Employer-Employee relationship exists with said employees during the previous month.

17. Pursuant to the CBA, at all relevant times, Korean Farm was similarly obligated to submit monthly contribution reports to the Funds describing the hours and days worked by each of its employees working in covered employment.

## THE FUNDS' 2010-2012 AUDIT OF KOREAN FARM'S BOOKS AND RECORDS

18. In 2013, the Funds conducted an audit of Korean Farm's books and records and determined that Korean Farm had failed to remit the required health, welfare and pension contributions on behalf of its employee Humaro Altamirano for the period of January 1, 2010 through December 31, 2012 (the "2010-2012 Audit").

19. To settle the Funds' claims pursuant to the 2010-2012 Audit, the Funds agreed to accept and Korean Farm agreed to pay $48,271,68 (the "Audit Settlement Amount"), inclusive of interest, for delinquent health, welfare and pension contributions owed to the Funds pursuant to the 2010-2012 Audit in full satisfaction of all contributions, interest, costs,

4

liquidated damages, attorneys' fees and/or other obligations due and owing by Korean farm to the Funds.

20. Korean Farm agreed to pay the Funds the Audit Settlement Amount in eighteen (18) monthly installments, each in the amount of $2,681.76 and executed a stipulation of settlement ("Stipulation of Settlement").

21. In addition, Defendant Kim, the principal of Korean Farm, personally guaranteed the entire Audit Settlement Amount.

22. Pursuant to the Stipulation of Settlement, Korean Farm was obligated to make eighteen monthly (18) payments of $2,681.76 as well as remain current on its contributions to the Funds during the term of the eighteen (18) month payout.   In the event that any of the settlement checks made to the Funds were returned for insufficient funds or any payments due were not timely received by the Funds, Korean Farm would be in default and have five (5) days to cure the default.  If Korean Farm failed to cure said default with the five (5) day cure period, the Funds, at their sole option and discretion, had the right to commence an action against Korean Farm for, inter alia, all unpaid contributions pursuant to the 2010-2012 Audit.

23. Korean Farm made ten (10) out of the eighteen (18) payments and then failed to remit any additional payments due pursuant to the Stipulation of Settlement

24. Korean Farm was duly defaulted by the Funds and failed to cure the default.

25. Accordingly, Korean Farm has breached the Stipulation of Settlement.

## KOREAN FARM'S CURRENT DELINQUENCIES TO THE FUNDS

26.    Korean Farm has further breached a material term of the Stipulation of Settlement by failing to remain current in remitting the required  health, welfare and pension contributions and reports to the Funds.

27.    Specifically, Korean Farm has failed to remit its contributions and reports on behalf of its employees working in covered employment for the period of February 2014 through June 2014 in the estimated cumulative amount of $14,114.15.

28.    By willfully failing to remit the required health, welfare, and pension contributions and reports to the Funds, Korean Farm has violated the terms of the CBA, the Trust Agreements, ERISA and a material term of the Stipulation of Settlement.

29.    Although payment has been duly demanded, Korean Farm has failed and refused to pay contributions to the Funds as they become due, and it is anticipated that the delinquency will grow during the pendency of this action due to Korean Farm's failure to timely remit contributions to the Funds as they become due.

## AS AND FOR A FIRST CAUSE OF ACTION AGAINST KOREAN FARM - CLAIM FOR INJUNCTIVE RELIEF PURSUANT TO ERISA

30.    Plaintiffs repeats and reallege each and every allegation contained in Paragraphs 1 through 29 of the Complaint, as if fully set forth herein.

31.    Pursuant to the Stipulation of Settlement, Korean Farm was obligated to remit eighteen (18) monthly installment payments of $2,681.76 as well as remain current on its contributions and reports to the Funds during the term of the eighteen (18) month pay out schedule.

32. Pursuant to the CBA, the Trust Agreements, and ERISA, at all relevant times, Korean Farm was obligated to remit monthly health, welfare and pension contributions and reports to the Funds on behalf of all its employees working in covered employment on or before the tenth (10th) day of each month.

33. Korean Farm has willfully violated the CBA, the Trust Agreement and ERISA by failing to remit the required health, welfare and pension contributions and reports to the Funds on behalf of any of its employees working in covered employment for the period of February 2014 through June 2014 in the estimated cumulative amount of $14,114.15.

34. Korean Farm's prior conduct demonstrates a significant likelihood that it will continue to violate the CBA, the Trust Agreements and ERISA.

35. The Funds have no adequate remedy at law to ensure that Korean Farm will continue to adhere to its obligations pursuant to the CBA, the Trust Agreements and ERISA.

36. The Funds will suffer immediate and irreparable injury unless Korean Farm, its officers, agents, servants and employees are enjoined from failing, refusing or neglecting to remit the required health, welfare and pension contributions and reports to the Funds on behalf on any of its employees working in covered employment.

37. Accordingly, the Funds request this Court issue an injunction, permanently enjoining Korean Farm its officers, agents, servants, employees and all persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise from violating the provisions of the CBA, the Trust Agreements and ERISA by failing, refusing or neglecting to remit the required health, welfare and pension contributions and reports to the Funds on behalf on any of its employees working in covered employment.

7

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANT KOREAN FARM - VIOLATIONS OF THE CBA, TRUST AGREEMENTS AND PROVISIONS OF ERISA AND BREACH OF THE STIPULATION OF SETTLEMENT

38.　Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1 through 37 of the Complaint, as if fully set forth herein.

39.　Korean Farm made ten (10) out of the eighteen (18) payments and then failed to remit any additional payments due pursuant to the Stipulation of Settlement for the 2010-2012 Audit.

40.　Said failure and refusal by Korean Farm to remit the remaining payments totaling $21,454.08 due pursuant to the Stipulation of Settlement constitutes a breach of the Stipulation of Settlement.

41.　Korean Farm has further failed to remit the required contributions and reports on behalf of its employees working in covered employment for the period of February 2014 through June 2014 in the estimated cumulative amount $14,114.15.

42.　Said failure and refusal by Korean Farm to submit reports and make the required contributions for its employees constitutes a violation of Korean Farm's obligations pursuant to the CBA and the Trust Agreements, and is a violation, as well, of the provisions of ERISA and the LMRA.　The Funds seek enforcement of those provisions pursuant to Sections 502(a)(3)(b)(ii) and 515 of ERISA, 29 U.S.C. § 1132(a)(3)(b)(ii) and 29 U.S.C. § 1145, and Section 301(a) of the LMRA, 29 U.S.C. § 185(a).

43.　As a result of Korean Farm's violations of the CBA, the Trust Agreements and ERISA and breach of the Stipulation of Settlement, the Funds may be required to deny benefits provided under the Funds' benefit plans to employees of Korean Farm working in covered

employment for whom contributions have not been made, thereby causing said employee beneficiaries substantial and irreparable damage.

44.   Furthermore, the Funds may be required to provide said employee beneficiaries with benefits, notwithstanding Korean Farm failure to make its required contributions, thereby reducing the corpus of the Funds and endangering the rights of the employee beneficiaries on whose behalf contributions are properly being made, all to their substantial and irreparable injury.

45.   The Trust Agreements and the Stipulation of Settlement, referred to above, provide for the assessment of liquidated damages, interest,  as well as the expenses incurred by the Funds arising out of the collection of such delinquent contributions and remaining payments, including attorneys' fees and filing fees.

46.   By reason of the foregoing, the Funds  have been damaged by Korean Farm, and Korean Farm is liable to the Funds for the for: (1) all remaining payments pursuant to the 2010-2012 Audit in the amount of $21,454.08; (2) delinquent health, welfare and pension contributions owed for the period of February 2014 through June 2014 in an amount to be determined at trial, but believed to exceed $14,114.15; (3) delinquent health, welfare and pension contributions which become due during the pendency of this action; and (4) interest, liquidated damages, attorneys' fees and costs.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANT GUN JOONG KIM FOR INDIVIDUAL LIABILITY

47.   Plaintiffs repeat and reallege each and every allegation contained in Paragraphs 1 through 46  of the Complaint, as if fully set forth herein.

48.  Korean Farm made ten (10) out of the eighteen (18) payments and then failed to remit any additional payments due pursuant to the Stipulation of Settlement for the 2010-2012 Audit.

49.  Said failure and refusal by Korean Farm to remit the remaining payments totaling $21,454.08, due pursuant to the Stipulation of Settlement constitutes a breach of the Stipulation of Settlement.

50.  Defendant Kim personally guaranteed all amounts due pursuant to the Stipulation of Settlement.

51.  The Stipulation of Settlement, referred to above, provides for the assessment of liquidated damages as well as the expenses incurred by the Funds arising out of the collection of such delinquent contributions, including attorneys' fees and filing fees.

52.  By reason of the foregoing, Defendant Kim is liable to the Funds for all the remaining payments totaling $21,454.08 due pursuant to the Stipulation of Settlement, plus interest, liquidated damages, attorneys' fees and costs.

<u>**RELIEF REQUESTED**</u>

**WHEREFORE**, the Funds respectfully request Judgment against Korean Farm as follows:

**ON THE FIRST CAUSE OF ACTION**, that the Court:

a)  Issue an Order permanently enjoining Korean Farm, its officers, agents, servants, employees and all persons in active concert of participation with them who receive actual notice of the order, by personal service or otherwise from violating the provisions of the CBA, the Trust Agreements and ERISA by failing, refusing

10

or neglecting to remit the required health, welfare and pension contributions and reports to the Funds on behalf on any of its employees working in covered employment; and

b)   Such other and further relief as the Court deems just and proper.

ON THE SECOND CAUSE OF ACTION, that the Court:

a)   Award judgment in favor of the Funds and against Korean Farm for the remaining payments due pursuant to the Stipulation of Settlement in the amount of $21,454.08 and delinquent health, welfare and pension contributions for the period from February 2014 through June 2014 in an amount to be determined at trial but believed to exceed $14,114.15;

b)   Award interest on the remaining payments and unpaid contributions;

c)   Award liquidated damages at the rate of interest on the unpaid contributions, or twenty (20%) percent of all of the unpaid contributions, whichever is greater;

d)   Award the Funds their reasonable attorneys' fees, accounting fees, and the cost of this action; and

e)   Such other and further relief as the Court deems just and proper.

AND ON THE THIRD CAUSE OF ACTION, that the Court:

a)   Award a judgment in favor of the Funds against Kim for the entire remaining balance due pursuant to the Stipulation of Settlement in the amount of $21,454.08;

b)   Award interest on the remaining balance due pursuant to the Stipulation of Settlement;

11

c)  Award liquidated damages at the rate of interest on the unpaid Audit Settlement

Amount, or twenty (20%) percent of the unpaid Audit Settlement Amount, whichever

is greater;

d)  Award the Funds their reasonable attorneys' fees, costs of this action; and

e)  Such other legal or equitable relief as the Court deems just and proper.

Dated: New York, New York
July 16, 2014

DEALY SILBERSTEIN &
BRAVERMAN, LLP

By:

Milo Silberstein (MS 4637)
*Attorneys for Plaintiffs Daniel Kane, Jr.,*
*Oscar Gonzales, Charles Machadio, Myra*
*Gordon, Vincent Pacifico and Michael*
*Ferguson as Trustees of the United*
*Teamster Fund and as Trustees of the*
*United Teamster Pension Fund "A"*
225 Broadway, Suite 1405
New York, New York 10007-3001
(212) 385-0066

12

# EXHIBIT "A"

## STIPULATION OF SETTLEMENT

This Stipulation of Settlement, dated the 13th day of August, 2013 encompasses the understanding by and among THE TRUSTEES OF THE UNITED TEAMSTER FUND (the "Welfare Fund") and THE TRUSTEES OF THE UNITED TEAMSTER PENSION FUND "A" ("Pension Fund") (collectively with the "Funds"), which maintain their offices at 2137-2147 Utica Avenue, Brooklyn, New York 11234, KOREAN FARMS CORP. ("Korean Farms"),which maintains its principal place of business at 352/353 NYC Terminal Market, Bronx, New York, NY 10474.

### WITNESSETH:

WHEREAS, the Funds have alleged that Korean Farms owes certain contributions to the Funds as required by the collective bargaining agreement ("CBA") between Korean Farms and the International Brotherhood of Teamsters Local 202 (the "Union") pursuant to an audit conducted by the Funds for the period of January 2010 through December 2012 (the "2010-2012 Audit") in the amount of $48,271.71, inclusive of interest at the rate of eight (8%) percent per annum; and

WHEREAS, the parties, desiring to avoid the burden, uncertainty, delay, expense and distraction of litigation, have reached a settlement of all claims by the Funds against Korean Farms pursuant to the 2010-2012 Audit;

NOW, THEREFORE, in consideration of the mutual agreements contained herein, and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties have resolved this dispute upon the following terms and conditions:

1.    With the express intention of settling all claims arising from, in connection with, related to or in any manner associated, directly or indirectly, with this matter, Korean

1

Farms shall pay to the Funds and the Funds have agreed to accept $48,271.68, inclusive of interest, for delinquent health, welfare and pension contributions owed to the Funds pursuant to the 2010-2012 Audit in full satisfaction of all contributions, interest, costs, liquidated damages, attorneys' fees and/or other obligations due and owing by Korean Farms to the Funds. Korean Farms shall pay to the Funds the amount of $48,271.68 in eighteen (18) equal monthly installments in the total amount of $2,681.76 each as follows:

(a) $2,681.76 payable on or before September 1, 2013;

(b) $2,681.76 payable on or before October 1, 2013;

(c) $2,681.76 payable on or before November 1, 2013;

(d) $2,681.76 payable on or before December 1, 2013;

(e) $2,681.76 payable on or before January 1, 2014;

(f) $2,681.76 payable on or before February 1, 2014;

(g) $2,681.76 payable on or before March 1, 2014;

(h) $2,681.76 payable on or before April 1, 2014;

(i) $2,681.76 payable on or before May 1, 2014;

(j) $2,681.76 payable on or before June 1, 2014;

(k) $2,681.76 payable on or before July 1, 2014;

(l) $2,681.76 payable on or before August 1, 2014;

(m) $2,681.76 payable on or before September 1, 2014;

(n) $2,681.76 payable on or before October 1, 2014;

(o) $2,681.76 payable on or before November 1, 2014;

(p) $2,681.76 payable on or before December 1, 2014;

(q) $2,681.76 payable on or before January 1, 2015; and

(r) $2,681.76 payable on or before February 1, 2015.

2.      All payments due hereunder shall be made payable to the "United Teamster Fund", shall be directly sent to the Funds' offices, located at 2137-2147 Utica Avenue, Brooklyn, New York, 11234, and shall be due on or before the date specified in Paragraph 1 above.

3.      As and for security for the timely payment of the monetary obligations set forth in Paragraph 1 of this Stipulation of Settlement, all amounts due pursuant to this Agreement are expressly guaranteed by Gun Joong Ki, Principal of Korean Farms (the "Guarantor") as provided for in the form of a Guaranty attached hereto as Exhibit "A".

4.      As a material requirement of this Stipulation of Settlement, Korean Farms shall timely file all employer contribution reports and make all future payment of fringe benefit contributions to the Funds on or before the 10th day of each month for all employees employed during the preceding month in which those contributions are due (i.e. September 2013 contributions shall be paid on or before October 10, 2013). The failure to timely remit all future payments of fringe benefit contributions and corresponding reports to the Funds shall be considered a default pursuant to this Stipulation of Settlement.

5.      In the event that any of the settlement checks made to the Funds are returned for insufficient funds or any payments due pursuant to this Stipulation of Settlement are not timely received by the Funds, or are otherwise uncollectible, then Korean Farms shall be deemed to be in default of this Stipulation of Settlement. If Korean Farms fails to cure said default within five (5) calendar days of the receipt of notification thereof, the Funds shall have

3

the right, at its sole option and discretion, to commence an action against Korean Farms in the United States District Court for the Southern District of New York seeking all unpaid contributions pursuant to the 2010-2012 Audit, as well as interest and liquidated damages at a rate of no greater than twenty (20%) percent, and Korean Farms shall also be liable for all attorneys' fees, court costs and expenses incurred by the Funds in such an action. Additionally, in the event of such uncured default, the Funds shall further have the right to proceed separately or concurrently against the Guarantor pursuant to the terms of the Guaranty.

6.      Any and all notices or other communications required or permitted to be given under any of the provisions of this Stipulation of Settlement shall be deemed to have been duly given upon being sent by facsimile and first class mail, addressed to the parties at the addresses set forth below (or at such other address as any party may specify by notice to all other parties given as aforesaid):

|                        |                                             |
|------------------------|---------------------------------------------|
| For the Funds:         | Mr. Barry Reich<br>United Teamster Fund<br>2137-2147 Utica Avenue<br>Brooklyn, New York 11234<br>Facsimile No. (718) 252-3632 |
|                        | -with a copy to-                            |
|                        | Milo Silberstein, Esq.<br>Dealy Silberstein & Braverman, LLP<br>225 Broadway, Suite 1405<br>New York, New York 10007<br>Facsimile No. (212) 385-2117 |
| For Korean Farms:      | Mr. Gun Joong Jim<br>Korean Farms Corp.<br>352/353 NYC Terminal Market<br>Bronx, New York 10474<br>Facsimile No. (718) 589-4414 |

4

7.     This Stipulation of Settlement constitutes the sole and entire agreement among the parties and supersedes all prior contracts, agreements, negotiations, discussions and understandings, whether oral or in writing, among the parties and/or their representatives. The parties represent that in executing this Stipulation of Settlement, they have not relied upon any representation or statement not set forth herein. Any representations, warranties, promises or conditions, whether written or oral, not specifically incorporated herein, shall not be binding upon any of the parties with respect to the matters contained herein. The provisions of this Stipulation of Settlement may be waived, altered, amended or repealed in whole or in part, only upon the express written consent of the parties. No breach of any provision of this Stipulation of Settlement shall be deemed waived unless the waiver is in writing signed by a duly authorized representative of the waiving party. Waiver of any one breach shall not be deemed a waiver of any other breach of the same or any other provision of this Stipulation of Settlement.

8.     If any of the provisions, terms, clauses, or waivers or releases of claims or rights contained in this Stipulation of Settlement are declared unlawful, unenforceable, or ineffective in a legal forum of competent jurisdiction, then such provisions, terms, clauses or waivers or releases of claims or rights shall be deemed severable, such that all other provisions, terms, clauses, and waivers and releases of claims and rights contained in this Stipulation of Settlement shall remain valid and binding upon the parties.

9.     Each party to this Stipulation of Settlement hereby acknowledges, represents, and warrants that they are authorized to enter into, execute, deliver, perform and implement this Stipulation of Settlement, and agrees to indemnify and hold harmless each other party from all sums which may become due, including costs and attorneys' fees, as a result of this representation being false or inaccurate.

2

10.     The parties have cooperated in the drafting and preparation of this Stipulation of Settlement.  Neither party may be regarded as its drafter, and in any construction to be made of this Stipulation of Settlement, there shall be no presumption that it should be construed as against the interests of either party.

11.     This Stipulation of Settlement may be executed in any number of counterparts, each of which shall be an original but all of which taken together shall be but one and the same instrument.

12.     This Stipulation of Settlement shall be interpreted, construed and enforced pursuant to the laws of the State of New York.

3

THE TRUSTEES OF THE UNITED TEAMSTERS FUND

BY: _____

STATE OF NEW YORK   )
                         )s.s.:

COUNTY OF            )

                On the ____ day of _____,2013, before me personally came
_____ to me known, who did depose and say that he is authorized to
execute the foregoing Stipulation of Settlement on behalf of the Trustees of the United Teamster
Fund and duly acknowledged to me that he executed the same.


_____

NOTARY PUBLIC

4

THE TRUSTEES OF THE UNITED TEAMSTERS PENSION FUND "A"

BY: _____

STATE OF NEW YORK       )
                        )s.s.:
COUNTY OF               )

        On the ____ day of _____,2013, before me personally came
_____ to me known, who did depose and say that he is authorized to
execute the foregoing Stipulation of Settlement on behalf of the Trustees of the United Teamster
Pension Fund "A" and duly acknowledged to me that he executed the same.


_____
NOTARY PUBLIC

5

KOREAN FARMS CORP.

BY: _____
Gun Joong Kim
Principal


STATE OF NEW YORK )
                              )s.s.:
COUNTY OF          )

On the day of _____,2013, before me personally came _____ to me
known, who did depose and say that he is the _____ of Korean Farms Corp. and that he/she
is authorized to execute the foregoing Stipulation of Settlement, and duly acknowledged to me
that he executed the same.

_____
NOTARY PUBLIC

MYUNG KIM
NOTARY PUBLIC OF NEW JERSEY
MY COMMISSION EXPIRES APRIL 29, 2014

Sworn to and subscribed before me
this __19__ day of __Aug__ 20__13__.

6

PAYMENT GUARANTY (the "Guaranty")

FOR VALUE RECEIVED, in connection with and in consideration of the covenants and agreements made by the TRUSTEES OF THE UNITED TEAMSTER FUND and the TRUSTEES OF THE UNITED TEAMSTER PENSION FUND ("Obligee") and KOREAN FARMS CORP. ("Obligor") pursuant to that certain Stipulation of Settlement entered into by and among such parties on or about the date hereof (as it may be amended from time to time, the "Agreement"), the undersigned, Gun Joong Kim, the Principal of Obligor (the "Guarantor"), hereby guarantees for the benefit of Obligee, the full and prompt payment and performance when due, whether by reason of acceleration or otherwise, of any and all amounts due and payable from time to time by Obligor under Paragraph 1 of the Agreement, consisting of eighteen (18) consecutive monthly payments in the amount of $2,681.76, payable at such time and in such manner as are set forth therein, plus interest upon default at the governing legal rate in the State of New York and all reasonable costs and attorney's fees incurred by Obligee to recover said amounts (all such obligations are hereinafter referred to as the "Obligations"). Guarantor will derive material financial benefit from the settlement provided for in the Agreement.

Upon any default by Obligor in the payment of all or any portion of the Obligations, Guarantor shall be obligated to provide for the full and prompt payment of the Obligations, and the liability of Guarantor under this Guaranty shall be absolute, unconditional, direct, complete, immediate and continuing, to the full extent of the Obligations. This is an absolute, present and continuing guaranty of payment and not of collection. Guarantor covenants that this Guaranty will not be discharged, except by complete performance of the obligations contained herein and no act or thing, except full and indefeasible payment and discharge of all Obligations, or Obligee's written release thereof, shall in any way exonerate Guarantor or modify, reduce, limit or release the liability of the Guarantor hereunder. Upon any default in the payment of any Obligations following the expiration of any applicable cure period, no act or thing need occur to establish the liability of the Guarantor hereunder and Obligee may, at its sole election, proceed directly and at once, without notice, against Guarantor to collect and recover the full amount or any portion of the Obligations, without first proceeding against Obligor, any other guarantor of all or any part of the Obligations, or any other person, or against any security or collateral for the Obligations.

It is acknowledged and understood that, in any action to collect all or any portion of the Obligations upon Obligor's default, Obligee shall be entitled to proceed separately or concurrently against Obligor, Guarantor and any other guarantor of all or any part of the Obligations, and any successors or assigns of any of them; provided, however, that in no event shall Guarantor's liability under this Guaranty exceed the total amount of the Obligations outstanding from time to time, taking into account any and all amounts paid to or collected by Obligee from time to time under Paragraph 1 of the Agreement by or on behalf of such parties. No modification or amendment to the Agreement, or other agreement, waiver, or understanding among Obligee, or any other party shall be enforceable against Guarantor or in any way increase or expand Guarantor's liability under this Guaranty except with Guarantor's or Obligor's prior written consent, it being acknowledged that any such modification, amendment, or waiver that has been approved in writing by Obligor shall be binding on Guarantor.

Guarantor shall be entitled to assert any defense, right of set-off or other claim which Guarantor may have against Obligee, provided, however, that Guarantor does hereby (a) waive any defense Obligor may have due to insolvency, bankruptcy, or similar laws affecting creditor's rights, (b) waive any rights Guarantor may have under any anti-deficiency statute or other similar protections, (c) waive presentment for payment, demand for payment, notice of nonpayment or dishonor, protest and notice of protest, diligence in collection and any formalities which otherwise might be legally required to charge Guarantor with liability, and (d) waive any failure by Obligee to inform Guarantor of any facts Obligee may now or hereafter know about Obligor, the Obligations, or the transactions contemplated by the Agreement, it being understood and agreed that Obligee has no duty so to inform and that Guarantor is fully responsible for being and remaining informed by Obligor of all circumstances bearing on the risk of nonperformance of the Obligations. No modification or waiver of any of the provisions of this Guaranty shall be binding upon Obligee except as expressly set forth in a writing duly signed and delivered by Obligee.

Guarantor hereby waives any right to require Obligee to join Guarantor in any action brought hereunder or to commence any action against or obtain any judgment against Obligor or to pursue any other remedy or enforce any other right. Nothing contained herein shall prevent Obligee from pursuing concurrently or successively all rights and remedies available to it at law and/or in equity or under the Agreement, and the exercise of any of its rights or the completion of any of its remedies shall not constitute a discharge of Guarantor's obligations hereunder. None of Guarantor's obligations under this Guaranty or any remedy for the enforcement thereof shall be impaired, modified, or released in any manner by reason of the bankruptcy of Obligor or by reason of any creditor or bankruptcy proceeding instituted by or against Obligor. This Guaranty shall continue to be effective or be reinstated (as the case may be) if at any time payment of all or any part of any sum payable pursuant to the Agreement is rescinded or otherwise required to be returned by Obligee upon the insolvency or bankruptcy of Obligor.

This Guaranty is duly authorized and valid and is binding upon and enforceable against Guarantor and shall be binding upon Guarantor and his successors and assigns and shall inure to the benefit of Obligee and its heirs, estate and legal representatives. The execution and delivery of this Guaranty will not cause Guarantor to be in violation or default with respect to any law which it is subject or under any agreement. Immediately following the execution and delivery of this Guaranty, Guarantor will be solvent. All references to the singular shall be deemed to include the plural where the context so requires. If any provision of this Guaranty shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity without invalidating the remainder of such provisions or the remaining provisions of this Guaranty. This Guaranty has been executed, delivered and accepted at, and shall be deemed to have been made in, the State of New York. This Guaranty shall be interpreted, and the rights and liabilities of the parties hereto determined, in accordance with the laws of the State of New York. Any notices required hereunder shall be given pursuant to the terms of the Agreement. Any dispute or controversy arising under this Guaranty shall be resolved as provided in the Agreement.

2

IN WITNESS WHEREOF, this Guaranty has been duly executed and delivered by Guarantor effective this _____ day of _____, 2013.

**GUARANTOR:**

**GUN JOONG KIM**

Date: _____ 8 — 19 —13 _____

On the _____ day of August, 2013, before me personally came Gun Joong Kim, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same.

_____
NOTARY PUBLIC

**Acknowledged by Obligee:**

**KOREAN FARMS CORP.**

By: _____

Date: _____ 8 —19 —13 _____

MYUNG KIM
NOTARY PUBLIC OF NEW JERSEY
MY COMMISSION EXPIRES APRIL 29, 2014

Sworn to and subscribed before me
this 19 day of Aug 2013.

3